# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5808 | **DATE** | 5/26/2004 |
| **CASE TITLE** | | Dowe vs. National Railroad | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The Court finds that Amtrak's counsel violated 28 U.S.C. § 1927 and orders payment of a sanction as described in the attached Memorandum Opinion and Order. Plaintiffs' counsel are to file on or before 6/2/2004 a statement of recoverable expenses. Amtrak and counsel may file on or before 6/9/2004 a reply which addresses the reasonableness of the claimed expenses. The Court will then enter an order setting the amount of the sanction. The case is set for a status hearing on 6/16/2004 at 9:30 a.m. for the purpose of reporting on the status of the approval of pending settlement in this case.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 28 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 131 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA DOWE, Independent Administrator of the Estate of Sheena Dowe, Deceased, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 01 C 5808 |
| NATIONAL RAILROAD PASSENGER CORP., d/b/a Amtrak, et al., | ) ) ) ) | |
| Defendants. | ) | |

DOCKETED
MAY 2 8 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case arises from the collision of Amtrak's "City of New Orleans" train with a truck and trailer near Bourbonnais, Illinois on March 15, 1999. Eleven passengers of the train were killed in the collision, and many others were injured. The sixty-plus plaintiffs in this case, who included representatives of several of the deceased passengers as well as many of the injured passengers, sued Amtrak, claiming that its negligence and that of the locomotive engineer, Angel Flores, were the proximate cause of the collision. Amtrak denied liability and also filed third party claims for contribution against the owner of the truck, Melco Transfer Co.; John Stokes, the truck's driver; Birmingham Steel Co., which provided the load the truck was carrying; and Illinois Central Railroad, which was responsible for maintaining the track where the collision occurred.

The National Transportation Safety Board, a federal agency, investigated the collision and concluded that the truck driver was at fault in crossing the tracks even though warning lights

were flashing. Plaintiffs' theory was that Amtrak did not have adequate procedures for its engineers to respond to obvious obstructions on the tracks, and that when the locomotive engineer saw the truck when he was approximately one-quarter mile from the crossing, he only sounded his horn and made no effort to apply the brakes. Because the train struck the rear portion of the truck's trailer, plaintiffs contended that if the engineer had applied the brakes, the truck and trailer would have made it across the tracks without being struck.

The Court scheduled an "exemplar" trial of a number of the plaintiffs' claims, to begin on May 3, 2004. A few weeks before trial, all of the plaintiffs settled with Melco and Stokes, and the contribution claims against them were dismissed pursuant to the Illinois Contribution Among Joint Tortfeasors Act after the Court made a finding that the settlements had been made in good faith. Shortly before trial, a number of the plaintiffs settled with Amtrak. The cases of four plaintiffs proceeded to trial on May 3.

Prior to trial, the parties filed several motions *in limine*. These included a motion by the plaintiffs to bar reference to the National Transportation Safety Board's opinions, findings, and conclusions regarding the cause of the collision on the grounds that such evidence was barred by federal law. After briefing and oral argument, the Court made the following ruling on April 26, 2004:

> The Court grants the plaintiffs' request to bar reference to the opinions, findings, and conclusions reached by the National Transportation Safety Board in its investigation regarding the collision. Such evidence is unequivocally barred by federal statute and regulation. Under 29 U.S.C. § 1154(b), "[n]o part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." Regulations promulgated by the NTSB establish that although its employees may testify regarding factual information they obtained during the course of an investigation, including factual evaluations, they

2

may not testify about their conclusions or opinions. *See* §49 C.F.R. 835.3(c), (e). Based on these regulations, "[c]ourts have consistently held that 'the factual portions of a NTSB report are admissible into evidence, while excluding any agency conclusions on the probable cause of the accident.'" *Major v. CSX Transportation*, 278 F. Supp. 2d 597, 603-04 (D. Md. 2003) (quoting *Hurd v. United States*, 134 F. Supp. 2d 745, 750 (D.S.C. 2001), *aff'd*, 34 Fed. Appx. 77 (4th Cir. 2002), and citing *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 816 (4th Cir. 1982)). *See also Barna v. United States*, 183 F.R.D. 235, 237 (N.D. Ill. 1998) (barring reference by any party, witness, or attorney to conclusions contained in NTSB report). Amtrak contends that it should be able to cross examine the plaintiffs' expert witnesses with the NTSB's report and conclusions because they reviewed it; Amtrak claims the plaintiffs' experts have reached conclusions contrary to those made by the NTSB. At oral argument, however, Amtrak's counsel conceded that he could cite no case supporting his argument that the law permits such use of an NTSB report. Acceptance of Amtrak's position would allow it to bring in through the back door what it is precluded from bringing in through the front, and it would effectively abrogate § 1154(b). The Court does not believe that the plaintiffs have waived § 1154(b) by having their experts review the NTSB report. Plaintiffs' motion is therefore granted.

*Dowe v. Nat'l R.R. Passenger Corp.*, No. 01 C 5808, 2004 WL 887410, at *6 (N.D. Ill. Apr. 26, 2004).

The process of selecting the jury began seven days later, on May 3, 2004. Approximately forty-three prospective jurors appeared that day and completed a detailed questionnaire prepared by the parties. The following day, forty of the prospective jurors returned to court and were questioned by the Court and the parties. A jury of twelve was selected. Opening statements began on May 4 and continued on the morning of May 5. The evidence began on May 5.

In opening statement, Amtrak's counsel said the following:

So, what do the plaintiffs want you to believe? They want you to believe that Angel Flores, a victim himself, is the one who caused the accident.

First of all, this is -- their professional opinion witnesses -- that's what they are, they're people they're paying to come in and testify -- disagree with all the federal and state investigators by blaming Angel Flores, *because all the federal investigators and state investigators who looked at this accident did not criticize*

3

*Angel Flores at all*. It's only Mr. Demetrio's high-paid experts, and here's what they're going to tell you.

Trial Tr. 40 (emphasis added). Plaintiffs' counsel made no contemporaneous objection to counsel's reference to the conclusions of "federal investigators." After Amtrak's counsel had concluded his opening statement, however, plaintiffs' counsel moved for a mistrial, arguing that Amtrak's counsel had violated the Court's *in limine* ruling "with respect to findings by the federal government." Trial Tr. 68. Amtrak's counsel responded that his comment about "investigators" in opening statement was intended to refer not to the NTSB, but rather to the Federal Railroad Administration. Trial Tr. 69. The Court denied the motion for mistrial, but our comments were hardly an endorsement of counsel's remarks:

> THE COURT: He's talking about the FRA, not the NTSB. I mean, you're educating me on this stuff, so I don't know – I assume that's two different things.
>
> ...
>
> I don't think it's a basis for a mistrial. We'll see if the evidence comes in. I mean, I don't know that there's a statute that covers the FRA like it does on the NTSB. I don't know if the evidence is coming in or not. The jury has been told that the opening statements are not part of the evidence. The motion for mistrial is denied.

Trial Tr. 69.

On May 6, during his cross-examination of plaintiff's expert Richard Beall, a crucial witness, Amtrak's counsel asked the following series of questions:

> Q: And you reviewed the NTSB factual locomotive event recorder information, isn't that right?
>
> A: I did.

4

Q: And you also reviewed the total NTSB report that Mr. Durkin sent you, in fact, a color copy, I think you said yesterday?

A: I did.

...

Q: And you relied on some of the NTSB information in reaching your opinion, isn't that right?

A: Best I could.

Q: Because I think you spent at least five hours or six hours reviewing the NTSB information, is that right?

A: It's very voluminous, yes.

Q: And you also reviewed the Illinois State Police traffic reconstruction report?

A: I did.

...

Q: And you also relied on that in reaching your conclusions here, isn't that right?

A: I did.

Q: And you would agree that both those agencies looked at the activities of Mr. Stokes [the truck driver], is that right?

A: I would agree.

Q: You know, before – and you would agree that they also looked at the activities of Angel Flores [the locomotive engineer] before; isn't that right?

A: Correct.

...

Q: *And you reviewed and relied upon that final NTSB report, isn't that right?*

A: Yes.

> Q: *You rely on the facts in it?*
>
> A: Yes.
>
> Q: *And you would agree with me that neither the state or federal reports had any criticism of Mr. Flores?*

Trial Tr. 369-71 (emphasis added). At this point, counsel for plaintiffs objected. The Court, concluding that Amtrak's counsel had violated the *in limine* ruling, pointedly sustained the objection and directed the jury to disregard the question:

> THE COURT: The objection is sustained. Mr. Landman, the objection is sustained.
>
> MR. LANDMAN: Okay.
>
> THE COURT: The jury is directed to disregard that question. As I told you before, questions are not evidence.

Trial Tr. 371-72.

Counsel's cross examination of Beall continued without significant incident until the very end. As the time for a mid-morning break was approaching, the Court asked counsel after a particular question and answer whether he had reached a good place to pause. Counsel replied that his cross examination was nearly finished: "I have two more questions ...." Trial Tr. 389. He then asked the following questions:

> Q: Just because I wasn't sure you were going to bring the whole thing from ... from Florida, I've brought your entire file. Does that look about right? I don't want it to fall off. Why don't I take –
>
> A: About the same thickness as what I've got in the bag.
>
> Q: Okay. And you spent a good amount of time and got paid a good amount of money for reviewing that, isn't that right?
>
> A: I would agree.

6

> Q: And you did it very carefully, isn't that right?
>
> A: The best I could.
>
> Q: *Okay, other than you, is there anyone who criticized Mr. Flores' train handling?*
>
> A: I don't know if anyone else was asked to?
>
> Q: *Well, you know that there were federal and state regulators spending a lot of time looking at this report, isn't that right?*

Trial Tr. 389-90 (emphasis added).[1] At this point, plaintiff's counsel objected, and the Court sustained the objection and had the jury removed.

After the jury had left, plaintiffs' counsel moved for a mistrial, arguing that Amtrak's counsel had deliberately ignored the Court's *in limine* ruling on two occasions. Trial Tr. 391. Amtrak's counsel agreed that it was "very clear that we were not allowed to refer to the conclusions in the report," but he contended that in asking the question he had been referring only to the factual determinations of the NTSB, which the Court had said could be introduced. *Id.* The Court expressed skepticism at this explanation, pointing out that counsel was inquiring whether any federal regulator had criticized Flores: "How is that not a conclusion, when you've made it clear to them that the federal regulators includes the NTSB?" Counsel replied that the term "federal regulators" also included the Federal Railroad Administration (we note, for reasons that will become apparent momentarily, that counsel made no claim at this point that the term "federal regulator" did not include the NTSB). *Id.*

The Court continued to press Amtrak's counsel to explain how it was that his question could be interpreted other than as a reference to the NTSB's conclusions. Counsel's next line of

---

[1] It is reasonable to infer that Beall's "entire file," which Amtrak's counsel placed before him on the witness stand as a preface to these questions, included the NTSB's report.

7

defense was that the plaintiffs had introduced the NTSB into the case in their questioning of Beall regarding the agency's findings about the train's event recorder (commonly known as a "black box") – suggesting that plaintiffs had opened the door to inquiry in the prohibited area. Trial Tr. 392-93. The Court pointed out that Amtrak had made no objection to plaintiffs' questioning of Beall and again insisted on a direct response from counsel:

> THE COURT: [W]ith all due respect to you, Mr. Landman, I have now asked you the question twice, and I'm going to ask it a third time; and I am going to insist on a direct answer, so let me pose it again, sir. Explain to me how it is that when you ask a witness, after eliciting from him that the NTSB did an investigation and you ask a witness, "Isn't it a fact that nobody other than you criticized Mr. Flores's handling of the train," explain to me how it is that that's not a comment or not asking for evidence of the NTSB's conclusions?
>
> MR. LANDMAN: Because the Illinois –
>
> THE COURT: Are you saying that it is but you're allowed to do it, or are you saying it isn't? Which one?
>
> MR. LANDMAN: No, I'm saying it's not. I did not do that.
>
> THE COURT: Explain why.
>
> MR. LANDMAN: Because the Illinois State Police did an investigation. The Illinois Commerce Commission did an investigation. The Federal Railroad Administration did an investigation. He has all that.
>
> THE COURT: But you didn't ask him, "Isn't it a fact that the Federal Railroad Administration, the ICC, and the Illinois State Police didn't find Flores." You said, "Isn't it a fact that no regulator found Mr. Flores at fault or criticized his actions."
>
> MR. LANDMAN: Well, your Honor, I don't think that was introducing what the NTSB concluded.
>
> THE COURT: I have to say it's hard for me to see how you can make that argument with a straight face, Mr. Landman.

8

MR. LANDMAN: Well, your Honor, I do apologize.

Trial Tr. 393-94.

After this exchange, Amtrak's counsel returned to his "opening the door" claim. The Court rejected the argument, noting that the plaintiffs' introduction of the NTSB's factual findings was specifically permitted by the *in limine* ruling and thus could not be said to have opened the door to the matters excluded. The Court also observed that even if counsel felt the door had been opened, it was incumbent upon him to seek permission to go into the NTSB's conclusions before contravening the Court's *in limine* ruling. Trial Tr. 395, 397-99. Further colloquy took place regarding this issue. Trial Tr. 399-400. Then, at the conclusion of this lengthy discussion, counsel stated that "I don't think of the NTSB as regulators" and claimed he had not intended to refer to the NTSB when he asked Beall about "regulators." Trial Tr. 403. This comment at the end of the lengthy argument was the first time counsel had advanced this contention.

After taking a break to consider the matter, the Court returned and granted plaintiffs' motion for mistrial. The Court ordered Amtrak and its counsel to show cause why they should not be sanctioned pursuant to the Court's inherent authority and/or 28 U.S.C. § 1927 due to the violations of the *in limine* order. Trial Tr. 404-06. Amtrak and counsel have filed a memorandum and affidavit in response to the show cause order.

### Discussion

A court has inherent authority to assess attorney's fees as part of a fine imposed on a party and/or counsel to sanction the "'willful disobedience of a court order.'" *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975) (quoting *Fleischmann Distilling*

9

*Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967)); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (inherent authority extends to counsel as well as parties). The inherent authority permits imposition of attorney's fees only if the court finds that the party or attorney "acted in subjective bad faith" and that his challenged conduct "was unsupported by probable cause." *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983).[2]

A federal statute, 28 U.S.C. § 1927, permits a court to order a lawyer to pay "excess costs, expenses, and attorneys' fees reasonably incurred" if the lawyer "multiplies the proceedings in any case unreasonably and vexatiously." Section 1927 permits a court to sanction an attorney "where that attorney has acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice' ... or where a 'claim [is] without a plausible legal or factual basis and lacking in justification.'" *Badillo*, 717 F.2d at 1166 (citations omitted). Sanctions may be imposed under § 1927 for vexatious conduct based on a showing of either subjective or objective bad faith. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994) (quoting *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (internal quotations omitted)). The objective standard is satisfied by "extremely negligent conduct, like reckless and indifferent conduct." *Id.* at 120.

The Court need not determine at this time whether Amtrak's counsel acted in subjective bad faith. Counsel's conduct was objectively unreasonable and vexatious and thus sanctionable under § 1927, because he did not have a plausible legal or factual basis for his conduct, and the

---

[2] There is some support in this Circuit for the proposition that "bad faith" for purposes of the inherent authority standard requires only that the party or attorney acted "without at least a colorable basis in law," *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269-70 (7th Cir. 1983); *see also, Benner v. Negley*, 725 F.2d 446, 449 (7th Cir. 1984), but for present purposes we assume that the apparently more stringent standard described in *Badillo* applies.

conduct was lacking in justification. First, the Court's order was clear; the NTSB's conclusions and opinions regarding causation of the collision were out of bounds, whereas its factual determinations could be offered. Counsel's contention during argument on the motion for mistrial that plaintiffs had "opened the door" by their counsel's questions to Beall about the NTSB's reading of the "black box" was baseless; those questions concerned the NTSB's factual determinations and thus were appropriate under the Court's ruling. In any event, when an attorney believes that his opponent has opened the door to a matter that the trial judge has specifically excluded, he is not entitled to determine on his own that the judge's order is no longer enforceable and press ahead. Rather, the order remains in effect until the judge says otherwise, and thus the attorney must ask permission before going into the matter that the judge has ruled inadmissible.

Second, Amtrak's counsel violated the *in limine* order twice – three times, if one considers his previously-quoted comment in opening statement. The reference in opening statement was not a basis for a mistrial largely for two reasons: first, opening statements are not evidence, and second, no contemporaneous objection was made by plaintiffs. In addition, the particular context of the comment in opening statement left it less than clear that the jury would understand counsel as having referred to the NTSB's conclusions.

No such ambiguity existed in counsel's other violations of the order. As the Court has explained, when counsel first violated the order during his questioning of Beall, he made specific reference to the NTSB's report, and then attempted to elicit an admission that no report had criticized engineer Flores. *See* Trial Tr. 371-72. This was a clear intrusion into prohibited territory, and the Court's pointed ruling and instruction made it clear that the *in limine* order

11

would be enforced.

Counsel's last violation of the order came while this exchange was still fresh in his mind. Contrary to the position taken in Amtrak's response to the show cause order, the violation did not come in the final question by counsel, an inquiry about whether federal and state regulators had spent lots of time looking at the matter. Rather, counsel violated the *in limine* order in the prior question: "Other than you, is there anyone who criticized Mr. Flores's train handling?" Tr. 390. This question was, in its substance, identical to the one that had earlier prompted the Court to sustain an objection and give a limiting instruction. Thus counsel had no legitimate basis to believe that the question was proper. Plaintiffs' objection came after the next question, when it was apparent to the Court, and evidently to plaintiffs' counsel, that Amtrak's counsel was about to plow further into forbidden territory. But the violation had already occurred at that point. And contrary to Amtrak's and counsel's suggestion, no further warning was necessary to make this clear, at least not beyond the *in limine* ruling itself and the unambiguous ruling on the earlier question to Beall.

Third, counsel's contention that his conduct was justified because he did not regard the NTSB as a "regulatory agency" is without merit.[3] As indicated above, counsel's initial violation of the *in limine* order during his examination of Beall included a direct reference to the NTSB, not merely a generic reference to regulators. Counsel asked the following questions:

Q: And you reviewed and relied upon that final NTSB report, isn't that right?

A: Yes.

---

[3] In any event, this contention would not absolve the violation that occurred in counsel's opening statement, in which he referred to "federal investigators."

12

Q: You rely on the facts in it?

A: Yes.

Q: And you would agree with me that neither the state or federal reports had any criticism of Mr. Flores?

Trial Tr. 371. This passage reflects that counsel was subjectively aware of the bounds of the *in limine* ruling that he violated. Counsel's prefatory question referred to the "facts" in the NTSB's report, which may have been an effort to make it appear that he was within the exception in the Court's *in limine* ruling. But his final question's reference to the lack of criticism of the engineer was an unmistakable reference to the NTSB report's conclusions. Though the question itself did not include an express reference to the NTSB, it is clear in context that this was precisely what counsel was conveying to the jury. And the fact that his use of the term "federal and state reports" included, along with the NTSB's report, the reports of other agencies, does not alter the fact that in context, the question made a distinct and unambiguous reference to the NTSB's conclusions, an inquiry clearly prohibited by the Court's *in limine* order.

The same is true of counsel's later violation of the *in limine* order. Counsel asked the witness, "other than you, is there *anyone* who criticized Mr. Flores' train handling?" Trial Tr. 390 (emphasis added). The question was not limited to "regulators," and thus counsel's claimed subjective intent not to use the term "regulators" to refer to the NTSB is of no consequence.

The last question that counsel asked, just before the mistrial ruling, did refer to regulators: "Well, you know that there were federal and state regulators spending a lot of time looking at this report, isn't that right?" Trial Tr. 390. But even if counsel's claimed understanding of the term "regulators" did not include the NTSB, there is no reason to believe that the average juror would

13

have same limited understanding.

In any event, the NTSB is a "federal regulator" even under counsel's particularized definition. A "regulator" is one who regulates. *See* Webster's Third New Int'l Dictionary 1913 (1993). To "regulate" means "to govern or direct according to rule," or "to make regulations for or concerning." *Id.* There is no question that the NTSB makes regulations for and concerning railroads. Specifically, the NTSB has established regulations pertaining to the investigation of railroad accidents. *See* 49 C.F.R., Part 840. Among other things, these regulations require railroads to give the NTSB notice of railroad accidents, require the reporting of specified information about such accidents, and entitle NTSB investigators to access to rolling stock, tracks, records, and other evidence. In short, the NTSB is, along with the Federal Railroad Administration, a "federal regulator" of railroads.

Moreover, Amtrak's counsel himself used the term "regulator" in a way that clearly was meant to cover the NTSB and that therefore undercuts his current contention – a contention that, we note, he raised only belatedly even during the argument on the motion for mistrial. In the series of questions that led up to counsel's first violation of the *in limine* order, he referred to the reports of the NTSB and the Illinois State Police, and then asked:

> Q: ... [Y]ou would agree that both those agencies looked at the activities of Mr. Stokes, is that right?
>
> A: I would agree.
>
> Q: You know, before – and you would agree that they also looked at the activities of Angel Flores before, isn't that right?
>
> A: Correct.
>
> Q: And you've been involved in enough of these cases to know that very typically *the*

14

> *federal and state regulators* have these what they call human performance groups, and one of the things they look at is, you know, whether the person was well rested, they certainly do drug, alcohol tests, and they see if there's any stress in their life, any medications, and they do a pretty thorough job on that, isn't that right?
>
> A:   I agree.

Trial Tr. 370 (emphasis added). Counsel's reference to "human performance" testing in the final question is an unmistakable reference to procedures used by the NTSB in its investigations.[4] *See, e.g.,* Excerpt from NTSB Investigator's Manual, Vol. III (table of contents), *reprinted at* http://www.twa800.com/report/accmanvol3.doc; NTSB report dated 12/1/99, p. 3, *reprinted at* http://www.ntsb.gov/events/2000/aa1420/Exhibits/AA1420_6A.pdf. In short, counsel himself used the term "regulator" to include the NTSB; his current claim to the contrary does not hold water.

In sum, Amtrak's counsel violated the Court's *in limine* ruling at least twice. The violations were unambiguous. Counsel lacked a plausible legal or factual justification for doing what he did. His conduct was therefore unreasonable and vexatious, and there is no question that he multiplied the proceedings by causing a mistrial. For these reasons, the Court concludes that Amtrak's counsel, Mark Landman, violated 28 U.S.C. § 1927. The Court will impose a monetary sanction consisting of the expenses incurred by the District Court and plaintiffs' counsel as a result of the mistrial. The District Court's expenses consist of the fees of the jurors on May 3 ($2,473.75), May 4 ($2,274.25), May 5 ($696.00), and May 6 ($696.00), a total of $6,140.00. The recoverable expenses of plaintiffs' counsel include the reasonable out of pocket

---

[4] The Court overruled plaintiffs' objection to the question quoted above not because it referred generically to "regulators," but rather, quite obviously, because it did not seek to elicit any of the NTSB's opinions or conclusions. Trial Tr. 370-71.

15

expenses they incurred that were wasted as a result of the mistrial – that is, expenses for those items that would not have been used at a retrial, such as the cost of personnel, rental of equipment, etc.

## Conclusion

The Court finds that Amtrak's counsel violated 28 U.S.C. § 1927 and orders payment of a sanction as described above. Plaintiffs' counsel are to file on or before June 2, 2004 a statement of recoverable expenses. Amtrak and counsel may file on or before June 9, 2004 a reply which addresses the reasonableness of the claimed expenses. The Court will then enter an order setting the amount of the sanction. The case is set for a status hearing on June 16, 2004 at 9:30 a.m. for purpose of reporting on the status of the approval of pending settlements in this case.

MATTHEW F. KENNELLY
United States District Judge

Date: May 26, 2004